

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 4, 2015**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 14-31992-sgj7 |
| TONY EDWIN SWANKS AND | § | |
| FELISHA YOLANDA SWANKS | § | |
| | § | |
| Debtors. | § | |

---

| | | |
|---|---|---|
| WESTERN SURETY | § | |
| COMPANY, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | ADVERSARY NO. 14-03108-sgj7 |
| | § | |
| TONY EDWIN SWANKS AND | § | |
| FELISHA YOLANDA SWANKS, | § | |
| | § | |
| DEFENDANTS. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court finds that the following have been proven by Plaintiff by a preponderance of the

evidence:

*Findings of Fact*

1.    Plaintiff, Western Surety Company, is a surety company fully authorized to do business in the State of Texas.

2.    Defendants/Debtors, Tony Edwin Swanks and Felisha Yolanda Swanks (the "Swanks") filed a Chapter 7 proceeding under Title 11 of the United States Code on April 25, 2014.

3.    On or about April 26, 2013, the Debtors purchased a motor vehicle, specifically a used 2006 BMW 3 Series with VIN WBAVB13556KX44054 (the "BMW") from Gowdy Auto Sales ("Gowdy").

4.    In connection with the purchase of the BMW, the Debtors entered into that certain Motor Vehicle Retail Installment Contract (the "Contract") with Gowdy in which the Debtors financed $15,100.00 and agreed to repay said sum beginning May 26, 2013 with monthly payments in the amount of $500.46 each month.

5.    The Contract provides that the Debtors are giving Gowdy a security interest in the BMW.

6.    Pursuant to a Master Dealer Agreement between Bonfire Capital Group, LLC and Gowdy, Bonfire held possession of the original Certificate of Title to the BMW.

7.    The Debtors signed a Right of Repossession document at the time of their purchase of the BMW, also on April 26, 2013 in which the Debtors agreed if they failed to make a payment, Gowdy could repossess the BMW.

8.    The Debtors also signed a document called We Owe on April 26, 2013 with Gowdy in which the Debtors agreed that Gowdy owed nothing further to the Debtors.

9.    The Contract was assigned by Gowdy to Bonfire on or about May 10, 2013.

10.    Bonfire was in possession of the original Certificate of Title at the time that the Contract was assigned to Bonfire by Gowdy.

11.    On May 13, 2013, Bonfire sent a letter to the Debtors welcoming them and advising them that the Contract had been assigned by Gowdy to Bonfire and directing them to make all future payments to "Bonfire Capital Group, LLC and provided instructions on where to send future payments.

12.    On May 25, 2013, the Debtors made the first monthly installment payment due under the Contract to  Bonfire through a Western Union speed pay payment in the amount of $500.46.

13.    On June 27, 2013, in connection with Felisha Swanks' attempt to apply for a Texas Certificate of Title to the BMW in her name, the State of Texas sent Felisha Swanks a letter advising her that it would need certain evidence and a surety bond

conditioned on the provisions of Section 501.053(a) of the Texas Transportation Code.

14. On July 27, 2013, in connection with an Application to the State of Texas for a Certificate of Title submitted by Felisha Swanks, Felisha Swanks submitted an Application to Western Surety Company for a Certificate of Title Bond.

15. Based on Debtor Felisha Swanks' Application for Bond to Western, Western issued a Certificate of Title Bond (the "Bond") relating to the BMW.

16. Based on Western's issuance of the Bond, the State of Texas issued a Bonded Title listing Felisha Swanks as the record title holder for the BMW with no lienholders.

17. The Bonded Title does not reflect either Gowdy or Bonfire as a lienholder of the BMW.

18. The Application for Title submitted by Felisha Swanks to the State of Texas did not list a lienholder despite the Contract specifically granting Gowdy a security interest in the BMW.

19. Bonfire attempted to perfect its lien on the BMW on or about July 16, 2013 but as a result of Felisha Swanks having applied for title, the State of Texas would not allow Bonfire to perfect its lien on Certificate of Title.

20. Debtors made an initial down payment of $1,000.00 toward the purchase of the BMW at the time they purchased the BMW and financed the balance, being $15,100.00.

21. Debtors made an installment payment to Bonfire under the Contract in the amount of $500.46 on May 25, 2013 via Western Union Speed Pay.

22. Other than the down payment and the payment made on May 25, 2013 to Bonfire, Debtors made no other payments due under the Contract.

23. Bonfire made demand upon Debtors to pay past due amounts due under the Contract.

24. The Debtors failed to comply with Bonfire's demands.

25. In connection with her Application to Western for the issuance of a Certificate of Title Bond, Debtor Felisha Swanks agreed to indemnify Western if any claims were made against Western on the Bond.

26. As a result of Bonfire not being able to perfect its lien on the Certificate of Title, Bonfire made a demand on the Bond issued by Western on August 29, 2013.

002510.000192\4838-2475-7028.v1

27. On September 16, 2013, Jon Olson with Western sent Felisha Swanks a letter asking her if she had a defense to Bonfire's claim on the Bond.

28. In connection with the claim of Bonfire, Western paid Bonfire the sum of $14,898.87 in order to satisfy its claim on the Bond.

29. In connection with Western's payment to Bonfire to settle Bonfire's claim on the Bond, Bonfire executed a Final Release and Assignment in which it assigned the original title to the BMW to Western and further assigned to Western all rights that it had against both Debtors under the Contract.

30. Western is currently in possession of the original title to the BMW.

31. Debtor Felisha Swanks further agreed to indemnify Western for all costs, losses, expenses, and attorney's fees incurred by Western on account of having issued the Bond on behalf of Felisha Swanks.

32. On November 19, 2013 the Texas Department of Motor Vehicles sent Felisha Swanks a letter notifying her that the Texas Certificate of Title issued to her on July 17, 2013 had been suspended because the bond was reduced $14,898.87.

33. The November 29, 2013 letter sent by the Texas Department of Motor Vehicles to Felisha Swanks also indicated that if she did not obtain another bond in the amount of $14,898.87, she was required to return the title, the window's windshield registration sticker, license plates and a copy of the November 19, 2013 letter.

34. The November 29, 2013 letter sent by the Texas Department of Motor Vehicles to Felisha Swanks further indicated that until the Department received the requested surety bond information, the vehicle's record will indicate that the title is suspended and the vehicle cannot be sold or transferred, and that the department may cancel or refuse to renew the vehicle's registration.

35. The Texas Department of Motor Vehicles records reflect that the registration has not been renewed for the BMW subsequent to the initial registration issued to Felisha Swanks when she obtained the Bonded Title.

36. On January 3, 2014, Western, by and through its undersigned counsel, made demand on both Debtors to pay the sum of $14,898.87.

37. Debtors have not paid Western any sum of money in response to the January 3, 2014 demand sent by Western's counsel.

38. Debtors claim they sold the BMW in July 2013 and admit that they have not turned over the proceeds of the sale of the BMW to either Bonfire, Western, or the Trustee of Debtors' Bankruptcy Estate.

39.     Debtors have not provided the Trustee in this case or Western with any documentation reflecting the sale of the BMW.

40.     The documents on file with the State of Texas do not reflect that the Debtors have sold the BMW or that the Debtors have transferred title to the BMW at any time after the Bonded Title was issued to the Debtors.

41.     The Court finds that Western Surety Company is entitled to a lien on the BMW, pursuant to the assignment from Bonfire.

42.     According to the records with the Texas Department of Motor Vehicles, the last activity with the State of Texas was the issuance of the Title to Felisha Swanks.

43.     The Debtors have testified under oath in this bankruptcy proceeding that they sold the BMW for $6,000.00 less than one year prior to the filing of their Chapter 7 petition in this case.

44.     The Debtors did not disclose the sale of the BMW to any person in their initial schedules filed in this case.

45.     The Debtors appeared for their Section 341 meeting on June 4, 2014.

46.     At the Section 341 meeting, the Debtors testified that they had sold the BMW in July 2013.

47.     At the Section 341 meeting, the Trustee instructed the Debtors to amend their schedules to list the sale of the BMW as well as to provide detailed information regarding the sale of the BMW, to whom it was sold, when it was sold, and how much was received for the BMW.

48.     On August 4, 2014, Western filed its Complaint under Section 523 and 727 of the Bankruptcy Code objecting to the Debtors' discharge as well as the dischargeability of the Debtors' debt to Western and further seeking to have this Court liquidate the debt of the Debtors to Western.

49.     Western is entitled to receive not only the sum of $14,898.87, but also to foreclose its lien interest in the subject BMW and to be noted as the lienholder on the original title with the State of Texas.

50.     Debtors have converted the BMW by applying for a bonded title and purposely misrepresenting to the State of Texas that there were no lienholders so that the State of Texas, Department of Motor Vehicles, would issue a title free of any liens.

51.     The Debtors intentionally failed to disclose that there was a lien on the BMW to the State of Texas and have failed to pay for the BMW.

52.    The Court finds the Debtors testimony that they do not remember to whom they sold the BMW to not be credible.

53.    The Court finds that the Debtors are concealing the details regarding the sale of the BMW.

54.    Felisha Swanks, when applying for a bonded title, represented that she was in possession of the BMW and that there were no liens on the BMW.

55.    In their schedules in this case, the Debtors represented that the BMW had been disposed of by way of a repossession prior to one year prior to the filing of their bankruptcy petition in this matter when in fact it had not been.

56.    The Debtors testified at the Section 341 meeting that they sold the BMW for $6,000.00 and kept the proceeds.

57.    There is no evidence on file with the Texas Department of Motor Vehicles that the Debtors sold the BMW.

58.    Western has incurred attorney's fees in an amount of $16,349.08 through January 31, 2015 and is entitled to a judgment against the Debtors for this amount, in addition to the sum that it paid on its Bond, $14,898.87, plus interest under the state rate, 5% per annum.

59.    The Debtors have not disclosed the receipt of the $6,000 in funds on their schedules in a timely manner and only disclosed the sale after Western filed this Adversary Complaint.

60.    The Debtors' have given inconsistent statements about the whereabouts of the BMW on their schedules.

61.    On the one hand, they claim that there were no foreclosures within the one-year period prior to the filing of their bankruptcy petition in April 2014. See Statement of Financial Affairs.

62.    The Debtors also claim that Bonfire Capital Group, LLC was the holder of an unsecured nonpriority claim incurred on 4-26-13 as a result of an "automobile repossession deficiency." See Schedule F.

63.    In Schedule F, the Debtors represented that the BMW was repossessed by Bonfire.

64.    In their 341 meeting, the Debtors testified that the BMW was sold and they received $6,000 in proceeds.

65.    The Debtors did not amend their Statement of Financial Affairs and indicate that they sold the BMW until after Western filed its Adversary Complaint in this action.

66.    The Debtors were represented by bankruptcy counsel during their underlying bankruptcy case.  They have also filed multiple bankruptcy cases in the past.  The court finds the Debtors to have been sophisticated enough to understand the questions and significance of the bankruptcy Schedules and Statement of Financial Affairs.

## *Conclusions of Law*

1.    This Court has jurisdiction of this matter under 28 U.S.C. § 1334 (a) and (b).

2.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

3.    Venue is proper for this action as Debtors/Defendants' Chapter 7 bankruptcy proceeding is pending in this District.

### Section 523 (a) (2)

4.    The debt of the Defendant Felisha Swanks to Western should not be discharged under Section 523 (a)(2)(A) of the Bankruptcy Code because it was obtained by false pretenses, a false representation, or actual fraud.

5.    When Debtor Felisha Swanks applied for a bonded title, she represented that she was in possession of the BMW and that there were no liens on the BMW.  In fact, both she and Tony Edwin Swanks had granted a security interest in the BMW to Gowdy.  Even if Felisha Swanks was unaware that the security interest was assigned to Bonfire, she signed the Contract which clearly indicated she was granting a security interest in the BMW to Gowdy.

### Section 523 (a) (4)

6.    The conduct of the Debtors constitutes embezzlement within the meaning of Section 523 (a)(4) of the Bankruptcy Code.  As such, the debt of the Debtors to Western is not dischargeable under Section 523 (a)(4) of the Bankruptcy Code. "Embezzlement" is a "fraudulent" appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come". "Embezzlement" applies when a debtor unlawfully appropriates property after it has been entrusted to the Debtor's care.

7.    The Debtors have misappropriated the BMW to the exclusion of first Gowdy, then Bonfire, then Western's interest in the BMW.

8.    The Debtors claim they sold the BMW and kept the proceeds.  If in fact the Debtors sold the BMW, they had an obligation to turn over the proceeds and failed to do so.

9.    Western received none of the proceeds from the sale of the BMW.

10.    The Debtors have not disclosed the true whereabouts of the BMW in this case.

7

11.     Western is entitled to a lien on the BMW but has been deprived of its lien on the BMW as a result of the conduct of the Debtors and their concealment of material information in this case and the misrepresentations to the State of Texas.

12.     The Debtors have embezzled Western's collateral (BMW) and the proceeds therefrom.

### Section 523 (a) (6)

13.     The debt of the Debtors to Western is not dischargeable under Section 523 (a)(6) of the Bankruptcy Code. It is a debt for willful and malicious injury by the Debtors to Western or to the property of Western.

14.     The Debtors knew that by failing to turn over the BMW or the proceeds therefrom, or by hiding the BMW, there was a substantial certainty of harm to Western arising from the Defendants' conversion of the BMW, a deliberate and intentional action by the Defendants.

### Section 727 (a)(3)

15.     The Debtors are not entitled to a discharge pursuant to Section 727 (a)(3) of the Bankruptcy Code.

16.     The Debtors have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers form which their financial condition or business transactions might be ascertained.

17.     The Debtors have failed to keep or preserve the records from which the Trustee and creditors could ascertain the true facts relating to the Debtors' financial condition.

### Section 727 (a)(4)(A) and (D)

18.     The Debtors are not entitled to a discharge under Section 727 (a)(4) of the Bankruptcy Code.

19.     The Debtors knowingly and fraudulently made a false oath or account by providing false information on their schedules and Statement of Financial Affairs.

20.     The Debtors failed to explain satisfactorily the loss of assets or deficiency of assets to meet their liabilities.

21.     The Trustee and creditors have not been provided with records relating to what actually happened with the BMW and the Debtors have withheld from an officer of the Estate recorded information relating to the Debtors' property or financial affairs.

### Section 727 (a)(5)

22. The Debtors are not entitled to a discharge under Section 727(a)(5) of the Bankruptcy Code.

23. The Debtors have failed to explain satisfactorily any loss of assets or deficiency of assets to meet their liabilities.

24. The Debtors have failed to amend their schedules despite being admonished by the Trustee to do so in their 341 meeting.

25. Judgment should be rendered for Western Surety Company against the Debtors, jointly and severally, for the principal amount of $14,898.87, plus reasonable attorney's fees and costs in the amount of $_____ for attorney's services rendered through the trial of this matter. The Judgment shall also award Western Surety Company a lien on the subject BMW and order the Debtors to use all reasonable and best efforts to turn over possession and control of the BMW to Western Surety Company or its agents, as Western Surety Company may direct, along with the keys and all other documents appurtenant thereto, within 14 days of the date of the Judgment, and to execute any documents that Western Surety Company reasonably requests in order to obtain a Certificate of Title from the State of Texas.

26. The entire amount of the judgment is non-dischargeable.

27. The Debtors are denied their discharge.

28. This Court has the authority to liquidate the debt of the Swanks to Western Surety Company and rendering a monetary judgment in favor of Western Surety Company under See Morrison v. Western Builders of Amarillo (In the Matter of Morrison), 555 F.3d 473, 479-80 (5th Cir. 2009).

29. The non-dischargeable debt of the Debtors to Western Surety Company consists of all amounts that have been misappropriated, in addition to interest, attorney's fees, and costs. *Cohen v. De La Cruz*, 523 U.S. 213, at 222, 118 S.Ct. 1212, 140 L.Ed. 2d 341 (1998) (discharge exception prevents discharge of all liability resulting from the debt, including treble damages, attorney's fees, and costs); *Neo Ventures v. Hamann* (In re Hamann), 2010 WL 2985887, at p. 5-6 (Bankr. W.D. Tex. July 27, 2010) (recovery allowed if state court permits); *Western Surety Company v. Dauterman* (In re Dauterman) 156 B.R. 976, at 981-82 (Bankr. N. D. Ohio 1993) (plain language of 11 U.S.C. §523 suggests that dischargeability is an "all or nothing" proposition. . . . . In fact, the exceptions to discharge tend to punish the dishonest debtor, requiring recompense in accordance with the actual loss sustained).

9

To the extent that any finding of fact constitutes a conclusion of law or any conclusion law constitutes a finding of fact, Western Surety Company requests that such finding or conclusion be considered as such.

**###END OF ORDER###**

002510.000192\4838-2475-7028.v1